UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LUCILLE DOLGOS and FRANK DOLGOS,  )<br>Plaintiffs,  )<br>  )<br>v.  )<br>  )<br>LIBERTY MUTUAL INSURANCE COMPANY,  )<br>Defendant.  ) | CAUSE NO. 2:12-CV-163-PRC |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 31], filed by Defendant Liberty Mutual Insurance Company ("Liberty Mutual") on May 24, 2013. For the reasons set forth below, the Court denies the motion.

## PROCEDURAL BACKGROUND

Plaintiffs Lucille and Frank Dolgos filed their Complaint against Defendant Liberty Mutual on March 21, 2012, in the St. Joseph County, Indiana Circuit Court. Defendant Liberty Mutual removed the case to this Court on April 25, 2012, and filed an Answer on May 2, 2012. On May 10, 2012, the Dolgoses filed a Motion to Remand to State Court, which Judge Lozano denied on July 10, 2012.

On September 26, 2012, the parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

Liberty Mutual filed the instant Motion for Summary Judgment against the Dolgoses on May 24, 2013. The Dolgoses filed a response in opposition on June 24, 2013, and Liberty Mutual filed a reply on July 11, 2013.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts

to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

**FACTUAL BACKGROUND**

On February 9, 2010, Plaintiff Lucille Dolgos was injured after slipping and falling at a Hacienda Restaurant. Defendant Liberty Mutual is the insurer of Hacienda Restaurants.

On January 19, 2012, Liberty Mutual and Lucille Dolgos settled Lucille Dolgos' personal injury claim for $20,000.00. Pursuant to the settlement, Lucille Dolgos signed a "Notice and Release and Settlement of Claim" ("Settlement Agreement") dated January 19, 2012, which provides:

> For the sole consideration of: Twenty thousand dollars ($20,000.00) the undersigned hereby releases and forever discharges: HMR Acquisition Company Inc, Hacienda Restaurants, Liberty Mutual Insurance Companies, and all other persons, firms and corporations from all claims and demands, rights and causes of action of any kind of[sic] undersigned now has or hereafter may have on account of or in any way growing out of bodily injury resulting or to result from an occurrence which happened on or about 02/09/2010 and do hereby covenant to indemnify and save harmless the said party or parties from and against all claims or demands whatsoever on account of or in any way growing out of said occurrence or its results to person. This release expresses a full and complete SETTLEMENT of a liability claimed and denied, regardless of the adequacy of the above consideration, and the acceptance of this release shall not operate as an admission of liability on the part of anyone nor as an estoppel, waiver or bar with respect to any claim the party or parties release may have against the undersigned. Witness my hand and seal.
>
> YOU ARE MAKING A FINAL SETTLEMENT.
> THIS IS A RELEASE: READ BEFORE SIGNING.

Def. Br., Exh. A.

On March 21, 2012, the Dolgoses filed the instant lawsuit against Liberty Mutual for breach of the Settlement Agreement because Liberty Mutual had not yet paid Lucille Dolgos the $20,000.00 settlement amount.

On April 5, 2012, Medicare Secondary Payer Recovery Contractor ("MSPRC") sent Liberty Mutual an initial summary letter and a Payment Summary Form providing, in part, that "Medicare has identified $403.33 in conditional payments that we believe are associated with your claim . . . ." Def. Br., Exh. B, p. 1. The letter is date stamped as having been received on April 10, 2012. The dates of service on the Payment Summary Form range from July 8, 2010, to February 2, 2012. The letter further provides:

4

> Please be advised that we are still investigating this case file to obtain any other outstanding Medicare conditional payments. Therefore, the enclosed listing of current conditional payments (including a response of a zero amount) is not a final listing and will be updated once we receive final settlement information from you. It is in your best interest to keep Medicare's payments and the statutory obligations to satisfy Medicare in mind when the final dollar amount is negotiated and accepted in resolution of the claim with the third party.

*Id*. at p. 2.

On September 4, 2012, Liberty Mutual, through counsel, received a Final Determination Letter sent to Lucille Dolgos dated August 27, 2012, which provided that Medicare had not made any conditional payments related to the February 9, 2010 incident.

On December 10, 2012, counsel for Lucille Dolgos received a check for $20,000.00 from Liberty Mutual.

## ANALYSIS

In their "Complaint for Breach of Contract," the Dolgoses allege that Liberty Mutual stalled in paying the $20,000.00 settlement by taking the position that the company needed approval from Medicare before they would pay Lucille Dolgos when Liberty Mutual allegedly knew that Medicare had not made any payments related to the claim. The Dolgoses allege that this position was frivolous and "without regard to any requirements or necessity." Compl. ¶ 5. Thus, the Dolgoses assert that they are entitled to attorney fees and eight percent interest on the $20,000.00 settlement from the date of the Settlement Agreement to the payment as a result of the alleged breach.

In the Motion for Summary Judgment, Liberty Mutual first argues that the release clause in the Settlement Agreement bars this action. Next, as to the breach of contract claim, Liberty Mutual argues that it acted reasonably in postponing release of the settlement until the Final Determination Letter was received from Medicare. Finally, Liberty Mutual argues that the Dolgoses are not entitled to attorney fees for a breach of contract claim under Indiana law.

5

**A.  Breach of the Release Clause**

Liberty Mutual argues that Lucille Dolgos breached the terms of the release clause in the Settlement Agreement by filing the present lawsuit.  The Dolgoses respond that the release clause does not apply to a breach of contract action.

Under Indiana law, settlement agreements are governed by the same principles of contract law as are other agreements.  *MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 757 (Ind. Ct. App. 2010) (citing *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003)).  As asserted by Liberty Mutual, if the language of a contract is unambiguous, the intent of the parties is determined from the four corners of that instrument.  *See Peoples Bank & Co. v. Price*, 714 N.E.2d 713, 716 (Ind. Ct. App. 1999).  In contrast, if the language is ambiguous–that is, "susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning"–then the Court "may resort to extrinsic evidence to ascertain the intent of the grantors."  *Parkison v. McCue*, 831 N.E.2d 118, 128 (Ind. Ct. App. 2005) (quoting *Brown v. Heidersbach*, 360 N.E.2d 614, 619-20 (Ind. Ct. App. 1977)).  When ascertaining the intent of the parties, the court reads the contract as a whole, construes the language so as not to render any words, phrases, or terms ineffective or meaningless, and is bound to "accept an interpretation of the contract that harmonizes its provisions rather than one that causes the provisions to conflict."  *Winterton, LLC v. Winterton Investors*, LLC, 900 N.E.2d 754, 759 (Ind. Ct. App. 2009) (quoting *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d at 501 )).

As set forth above, the terms of the Settlement Agreement provide that Lucille Dolgos "hereby releases and forever discharges . . . Liberty Mutual Insurance Companies . . . from all claims and demands, rights and causes of action of any kind . . . on account of or in any way growing out of bodily injury resulting or to result from an occurrence which happened on or about 02/09/2010."  Def. Br., Exh. A.  Without identifying any specific language within the Settlement Agreement, Liberty Mutual would have the Court read it as meaning that Lucille Dolgos releases Liberty Mutual

6

from *all* claims against it, including a breach of contract claim. The Dolgoses counter, and the Court agrees, that the clear and unambiguous language of the release provides that the release precludes future actions based on bodily harm that arose from the February 9, 2010 injury. There is no express language set forth in the four corners of the Settlement Agreement precluding a breach of contract action. Moreover, "Indiana strongly favors settlement agreements and if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." 938 N.E.2d at 757.[1] Thus, this action is not barred by the release clause in the Settlement Agreement.

### B. Breach of Contract

Liberty Mutual seeks summary judgment in its favor on the Dolgoses' breach of contract claim, arguing that, as a matter of law, the Dolgoses are not entitled to interest for the time between the signing of the settlement agreement on January 19, 2012, and the tender of payment on December 10, 2012, because Liberty Mutual acted reasonably in waiting for the Final Determination Letter from Medicare before issuing a check to Lucille Dolgos. The Dolgoses respond that Liberty Mutual acted unreasonably in waiting nearly eleven months to tender payment and, in particular, in waiting ninety-seven days after receipt of the Final Determination Letter to make payment to the Dolgoses.

As with the Settlement Agreement in this case, when the time for performance is not specified, a reasonable time is usually read into the contract. *See In re Estate of Moore*, 714 N.E.2d 675, 677 (Ind. Ct. App. 1999) (citing *Indiana Farmers Mut. Ins. Co. v. Walters*, 50 N.E.2d 868, 870 (Ind. 1943)). "[T]he question of what constitutes a reasonable time within which to perform an act is one for the trier of fact." *Bond v. Peabody Coal Co.*, 450 N.E.2d 542, 549 (Ind. Ct. App. 1983)

---

[1] In its Memorandum of Law in Support of Motion for Summary Judgment, Liberty Mutual cites *MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 757 (Ind. Ct. App. 2010), for the proposition that settlement agreements are governed by the same general principles of contract law as other agreements but fails to provide the Court with the preceding sentence of *Sands*, which acknowledges the right to seek a judgment for breach of a settlement agreement.

("In view of the parties[sic] expressed disagreement as to what [comprised] a 'reasonable time' for title examination under the facts presented, we conclude summary judgment was inappropriate here."); *see also Rogier v. American Testing and Eng'g Corp.,* 734 N.E.2d 606, 617 (Ind. Ct. App. 2000) (finding that there remained a genuine issue of material fact regarding whether the failure to perform an obligation as the other party's agent was within a reasonable time); *In re Estate of Moore*, 714 N.E.2d 675, 677 (Ind. Ct. App. 1999) (citing *Hamlin v. Steward*, 622 N.E.2d 535, 540 (Ind. Ct. App. 1993) (citing *Bond*, 450 N.E.2d at 549)); *Alexander v. Dowell*, 669 N.E.2d 436, 440 (Ind. Ct. App. 1996). Those facts include the subject matter of the contract, the circumstances attending performance of the contract, and the situation of the parties. *See Bond*, 450 N.E.2d at 549 (citing *Jay Clutter Custom Digging v. English*, 393 N.E.2d 230, 232 (Ind. Ct. App. 1979) (citing *Albright v. Hughes*, 26 N.E.2d 576 (Ind. App. 1940))).

Liberty Mutual argues that it acted reasonably in postponing release of the settlement proceeds until after receipt of Medicare's final determination letter. Medicare is authorized to make "conditional payments," which are defined as Medicare payments for services for which another payer is responsible. *See* 42 C.F.R. § 411.21. A primary plan, and an entity that receives payment from a primary plan, is required to reimburse Medicare with respect to any item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to the item or service. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). A primary plan's responsibility for payment may be demonstrated by a settlement, award, or contractual obligation. *See* 42 C.F.R. § 411.22(b)(3). If the beneficiary receives a primary payment and does not reimburse Medicare within 60 days, the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party. *See* 42 C.F.R. § 411.24. Thus, Liberty Mutual asserts that, if it had paid Lucille Dolgos the agreed upon settlement amount and later learned that Medicare had already paid her, Liberty Mutual would have had to reimburse Medicare the $403.33. In other words, Liberty Mutual argues that it withheld payment of all or even most of the $20,000.00 settlement amount

because Liberty Mutual may have been obligated to pay Lucille Dolgos $403.33 more than she was entitled to under the Settlement Agreement. Liberty Mutual also reasons, without citation to law, that, given its potential liability (which was $403.33), it was reasonable for it to wait for confirmation from Medicare before tendering payment.

The Dolgoses argue that there are several inquiries as to the reasonableness of Liberty Mutual's actions that must be made by the trier of fact–first, whether it was reasonable for Liberty Mutual to withhold the settlement payment for sixty-two days before the Dolgoses filed suit; second, whether it was reasonable for Liberty Mutual to withhold the settlement payment for eighty-two days before it received an initial summary letter from Medicare; and third, whether it was reasonable for Liberty Mutual to continue to withhold payment for an additional ninety-seven days after it confirmed that Medicare had paid none of the medical bills. The Dolgoses also argue that there is a question as to whether it was reasonable for Liberty Mutual to withhold all of the $20,000 settlement payment pending confirmation from Medicare rather than paying most of the settlement payment and withholding only the $403.33 at issue.

The Dolgoses contend that these are genuine issues of material fact, and the Court agrees. Notably, Liberty Mutual offers no law or argument that the Court should or can decide as a matter of law that its actions were reasonable. Liberty Mutual offers no explanation for its actions or lack thereof from January 12, 2012 until the first letter from MSPRC on April 5, 2012, which Liberty Mutual received *after* the Dolgoses filed this lawsuit. Similarly, Liberty Mutual offers no evidence, factual argument, or citation to law for why it was reasonable for it to wait ninety-seven days to tender payment on December 10, 2012, after it received Medicare's confirmation on September 4, 2012. Under the circumstances, whether Liberty Mutual performed under the settlement agreement within a reasonable time is a question of fact for the jury. The Court denies the Motion for Summary Judgment on the breach of contract claim.

### C.  Attorney Fees

Finally, Liberty Mutual argues that even if it is found to have breached the settlement agreement with the Dolgoses, the Dolgoses are not entitled to attorney fees under Indiana law. Indiana follows the American Rule, which requires parties to pay their own attorney fees absent an express agreement, statute, or other rule to the contrary.  *See Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009) (citing *Town of Georgetown v. Edwards Cmty. Inc.*, 885 N.E.2d 722, 726 (Ind. Ct. App. 2008)).  The settlement agreement between Lucille Dolgos and Liberty Mutual contains no provision for the payment of attorney fees, nor do the parties cite any statute that would require Liberty Mutual to pay the Dolgos's attorney's fees.

In their response brief, the Dolgoses invoke the "obdurate conduct" exception to the American Rule, which allows a "prevailing party who has been dragged into baseless litigation and thereby subjected to great expense" to be granted an attorney fee award only when "a party files a knowingly baseless claim or at the time a party discovers that the claim is baseless and fails to dismiss it."  *Kikkert v. Krumm*, 474 N.E.2d 503, 505 (Ind. 1985) (citing *Cox v. Ubik*, 424 N.E.2d 127 (1981); *Hall v. Cole*, 412 U.S. 1 (1943)).  In *Kikkert*, the Indiana Supreme Court reversed the trial court's award of attorney fees to the plaintiffs for the obdurate behavior of defendants prior to the initiation of the lawsuit for two reasons.  First, the court noted that the exception provides a remedy for *defendants* dragged into baseless litigation.  *Id*.  Second, the alleged obdurate behavior in that case occurred *before* the lawsuit was filed and the court reasoned that "[i]ntentional or illegal conduct that gives rise to a cause of action is not obdurate behavior; it is merely conduct that may form the basis of a potential lawsuit."  *Id*.  Thus, under the standard set forth in *Kikkert*, the "obdurate conduct" exception is not available to the Dolgoses for the actions of Liberty Mutual or for Liberty Mutual's behavior prior to the initiation of the lawsuit.

However, Indiana Code § 34-52-1-1 has codified the obdurate behavior exception and allows both defendants and plaintiffs to recover attorney fees if either party "brought the action or defense

on a claim or defense that is frivolous, unreasonable, or groundless," "continued to litigate the action or defense after the party's claim or defense clearly becomes frivolous, unreasonable, or groundless," or "litigated the action in bad faith." Ind. Code § 34-52-1-1; *see also Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 663 (Ind. Ct. App. 2008) (citing *State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 658 (Ind. 2001)); *Lacey v. Indiana Dept. of State Revenue*, 959 N.E.2d 936, 938 n. 1 (Ind. T.C. 2011) (citing *Town of St. John*, 751 N.E.2d at 658).

The Court finds that the motion for summary judgment on a claim for attorney fees under § 34-52-1-1 is premature. If the Dolgoses can show that Liberty Mutual has litigated in bad faith, as they contend, then they would be entitled to pursue attorney fees under Indiana law. Therefore, the Court denies the Motion for Summary Judgment on the claim for attorney fees.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Liberty Mutual's Motion for Summary Judgment [DE 31].

SO ORDERED this 4th day of September, 2013.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record